**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffery T. Hausauer,<br><br>           Plaintiff,<br><br>v.<br><br>City of Mesa, et al.,<br><br>           Defendants. | No. CV-20-00653-PHX-DWL<br><br>**ORDER** |

Pending before the Court is Plaintiff Jeffery T. Hausauer's Application for Leave to Proceed In Forma Pauperis (Doc. 2), which the Court hereby grants. The Court will screen Plaintiff's complaint (Doc. 1) pursuant to 28 U.S.C. § 1915(e)(2)[1] before it is allowed to be served. Pursuant to that screening, the complaint will be dismissed with leave to amend.

## LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2), a complaint is subject to dismissal if it contains claims that are "frivolous or malicious," that "fail[] to state a claim upon which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." *Id.* Additionally, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* Although Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v.*

---

[1] Although section 1915 largely concerns prisoner litigation, section 1915(e) applies to all in forma pauperis proceedings. *Calhoun v. Stahl,* 254 F.3d 845, 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.").

*Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

The Ninth Circuit has instructed that courts must "construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint [filed by a *pro se* litigant] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).  Conclusory and vague allegations, however, will not support a cause of action.  *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  A liberal interpretation may not supply essential elements of the claim that were not initially pled.  *Id.*

"If a pleading can be cured by the allegation of other facts, a *pro se* litigant is entitled to an opportunity to amend before the final dismissal of the action."  *Ball v. Cty. of Maricopa*, 2017 WL 1833611, *1 (D. Ariz. 2017) (concluding that complaint could not be amended to state a cognizable claim and dismissing with prejudice).

**BACKGROUND**

The complaint alleges as follows.  On April 2, 2019, Plaintiff, a U.S. military veteran (Doc. 1 ¶ 13), was riding a tricycle when he was struck by a truck at a traffic intersection in Mesa, Arizona.  (*Id*. ¶ 20.)  Six Mesa Police Department officers—Defendants Nicholas Nelson, David Monarrez, Carlos Santana, Christophe Tautimez, Shannon O'Leary, and

Linwood Brannon, III (the "Officers")—arrived at the scene. (*Id.* ¶ 22.A.)[2] Plaintiff, who was on the hood of the truck, told the Officers that he was badly injured and needed emergency medical treatment. (*Id.*)  The Officers "refused to allow the City of Mesa Paramedics to treat the Plaintiff immediately." (*Id.*)

Instead, the Officers ordered Plaintiff to remove himself from the hood of the truck and sit on the curb. (*Id.* ¶ 23.) Plaintiff explained that he could not move. (*Id.* ¶ 24.) Plaintiff "was told" by an unspecified person that he would be shot if he did not sit on the curb. (*Id.* ¶ 25.) Plaintiff attempted to move from the hood of the truck and fell to the ground "with his left foot pinned [behind] his left ear." (*Id.* ¶ 26.) Finally, at some unspecified point during the encounter, the Officers "collaborated to run over the Plaintiff with the civilian truck involved in the wreck, as part of their attempt to coerce a statement from [Plaintiff] that he was not hurt." (*Id.* ¶¶ 27.B, 29.B. *See also id.* ¶ 30 [the Officers "attempt[ed] to coerce a confession from the Plaintiff that would implicate him of conveying false witness of his injuries to them"].)

In the six months following this incident, Plaintiff, who has epilepsy and "a cariological issue"[3] (*id*. ¶ 13), suffered five grand mal seizures (*id*. ¶ 15) and required three surgeries and nearly six months of care an assisted living trauma recovery center (*id*. ¶ 16).

On April 1, 2020, Plaintiff initiated this lawsuit, suing the Officers, the Mesa Police Department, and the City of Mesa. (Doc. 1.) The complaint includes four counts: (1) deliberate indifference to medical needs, in violation of the Fourteenth Amendment (*id*. at 3); (2) a Fourteenth Amendment claim of "coercion" (*id*. at 4); (3) a common law tort claim for "assault as a result of coercion" (*id*. at 5); and (4) a violation of the right to equal protection under the Fourteenth Amendment (*id*. at 6).

…

…

---

[2]   "22.A" refers to the unnumbered paragraph between ¶ 22 and ¶ 23.
[3]   Cariology is the study of dental caries (tooth decay). The Court questions whether perhaps this is a typographical error and Plaintiff meant that he has a "cardiological issue" (a heart problem) rather than a dental cavity.

**ANALYSIS**

I. <u>Fourteenth Amendment</u>

    A. **Equal Protection**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). "To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." *Id.* (citation omitted). Alternatively, a plaintiff may (1) allege that he was discriminated against based on his membership in an identifiable group that is not considered suspect or protected, which would be subject to rational basis review, *Does 1-5 v. Chandler*, 83 F.3d 1150, 1155 (9th Cir. 1996), or (2) bring a "class of one" claim, in which he must plead that the defendant "intentionally, and without rational basis, treated the plaintiff differently from others similarly situated," *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges that his epilepsy and "cariological issue" are disabilities that make him a member of a protected class. (Doc. 1 ¶ 13.) However, Plaintiff does not allege that any Defendant acted with an intent or purpose to discriminate against him based on his membership in a protected class. In other words, Plaintiff fails to allege that any Defendant acted at least in part *because of* his epilepsy or cariological issue. Thus, Plaintiff's equal protection claim fails and is dismissed with leave to amend.

Additionally, although Plaintiff seeks to sue six different officers who presumably did not each engage in the exact same conduct during the encounter, the complaint repeatedly lumps them together as a collective whole—"The Defendant Officers"— without specifically alleging each one's role and conduct. This is an additional reason why

the complaint must be dismissed with leave to amend. *See, e.g., United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (recognizing the general rule that a complaint must "'differentiate the[] allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud'" and noting that differentiated allegations are not required only when "multiple defendants . . . are alleged to have engaged in precisely the same conduct"); *Dickenson v. Haga*, 2019 WL 416720, *3 (C.D. Cal. 2019) (dismissing complaint at the screening stage because "Plaintiff merely sets forth allegations as to actions taken by 'Defendants' as a collective group. Absent specific allegations identifying what actions each defendant took against Plaintiff and how such actions violated Plaintiff's rights, the Complaint fails to provide Defendants with fair notice of Plaintiff's claims or the grounds upon which they rest. As such, Plaintiff's claims against each individual defendant are subject to dismissal.") (citation omitted).

      B.    **Coercion**

The Fourteenth Amendment protects a defendant from the "use in a state criminal trial of a defendant's confession obtained by coercion . . . ." *Payne v. Arkansas*, 356 U.S. 560, 561 (1958). Plaintiff is not a criminal defendant, and the "coercion" in the complaint involves an attempt to coerce Plaintiff to make a statement exonerating the Officers and/or the unnamed truck driver, not a self-incriminating statement. Therefore, the Fourteenth Amendment is inapplicable to Plaintiff's coercion claim. No additional facts can salvage this claim, so it is dismissed with prejudice.

      C.    **Deliberate Indifference**

"Although the 14th Amendment does not generally require police officers to provide medical assistance to private citizens, when a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim." *Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997) (internal citation omitted). "[A] state actor . . . has a constitutional duty under the due process clause to protect an individual where the state places that individual in danger through affirmative

conduct," regardless of whether that individual is in custody. *Id.* at 711. Thus, in *Penilla*, the Ninth Circuit held that a Fourteenth Amendment deliberate-indifference claim could lie against police officers who responded to a 911 call, discovered Penilla lying on his porch "in grave need of medical care," and then inexplicably called off the paramedics, dragged Penilla from his porch into an empty house, locked the door, and left him alone until he died. *Id.* at 708-10. The Ninth Circuit emphasized that "[t]he officers' alleged conduct . . . clearly placed Penilla in a more dangerous position than the one in which they found him. . . . [B]y cancelling the 911 call, removing Penilla from public view, and locking the front door, the officers made it impossible for anyone to provide emergency medical care to Penilla." *Id.* at 710.

Similarly, in *Maxwell v. Cty. of San Diego*, 708 F.3d 1075 (9th Cir. 2013), police officers responded to a 911 call after a fellow officer shot his wife in the jaw during a domestic violence incident. *Id.* at 1079-80. Although medical personnel repeatedly stated that the victim "had to go to a trauma center quickly," a ranking officer "refused to let the ambulance leave because he viewed the area as a crime scene and thought that [the victim] had to be interviewed." *Id.* at 1081. As a result, the victim died en route to the hospital. *Id.* The Ninth Circuit held that the officers were not entitled to qualified immunity as to a Fourteenth Amendment due process claim, even though officers ordinarily may "not be held liable under § 1983 for an injury inflicted by a third party," because the "officers found [the victim] facing a preexisting danger from her gunshot wound. There is evidence they affirmatively increased that danger by preventing her ambulance from leaving. This arguably left [the victim] worse off than if the ambulance had been allowed to bring her to an air ambulance that had advanced medical capabilities and was ready to fly her to a trauma center." *Id.* at 1082. In reaching this conclusion, the court emphasized that "[t]t was obvious that delaying a bleeding gun shot victim' ambulance increased the risk of death." *Id.* at 1083.

Here, the complaint is too conclusory to state a claim under *Penilla* and *Maxwell*. In both of those cases, the Ninth Circuit emphasized that the officers responding to the 911

call encountered a victim in mortal peril who had an "obvious" need for immediate medical care yet took affirmative steps to interfere with the provision of that care, ultimately contributing to the victim's death. Here, in contrast, although the complaint asserts in conclusory fashion that "Plaintiff explained he was badly injured" (Doc. 1 ¶ 22A), it does not allege, with any factual specificity, what injuries Plaintiff actually suffered during the tricycle/truck accident or whether the peril arising from those injuries would have been apparent to the officers. Moreover, although the complaint refers to seizures, surgeries, and hospital stays during the months following the accident, it is unclear whether those episodes were the result of (1) Plaintiff's pre-existing health conditions (epilepsy and heart diseases), (2) the injuries that Plaintiff allegedly sustained when he attempted to move to the curb during his post-accident interaction with the Officers, or (3) the Officers' alleged refusal to provide immediate medical care for the injuries that Plaintiff allegedly sustained during the accident. Thus, Plaintiff's deliberate indifference claim fails and is dismissed with leave to amend.

Finally, the deliberate indifference claim also fails because, like the equal protection claim, it refers to the six individual officers in an undifferentiated mass. *Dickenson,* 2019 WL 416720 at *3.

II. <u>Assault and Battery</u>

For the reasons stated above, the complaint in its current iteration does not state any valid federal claims. Accordingly, the Court would decline to exert supplemental jurisdiction over the state-law tort claim. *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (applying state law to an assault and battery claim).

That claim is also subject to dismissal on the merits. Although the complaint characterizes the claim as one for "assault," "the factual allegations of the complaint clarify that [the] claim is for battery." *Chappell v. Wenholz*, 247 P.3d 192, 195 n.2 (Ariz. Ct. App. 2011). "To establish a battery claim, a plaintiff must prove that the defendant intentionally caused a harmful or offensive contact with the plaintiff to occur." *Johnson v. Pankratz*, 2 P.3d 1266, 1268 (Ariz. Ct. App. 2000).

The complaint alleges that the Officers—in an attempt to coerce Plaintiff into stating "that he was not hurt"—"collaborated to run over" Plaintiff with the same truck that had been involved in the traffic accident. The details of how the Officers managed to make this happen are missing. For example, the complaint does not indicate whether one of the Officers was operating the truck during the second collision, and, if not, how the Officers caused the second collision to occur.

The allegations are presently too vague to support a cause of action for assault and battery, even under a liberal interpretation. *Ivey*, 673 F.2d at 268. This claim is dismissed with leave to amend.

III.     Mesa Police Department and City of Mesa

The complaint, as drafted, does not establish grounds for liability as to the Mesa Police Department or the City of Mesa as to the federal claims. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("A municipality cannot be held liable under § 1983 on a respondeat superior theory."). Accordingly, the federal claims against those defendants will be dismissed with leave to amend.

Accordingly,

**IT IS ORDERED GRANTING** the application for leave to proceed in forma pauperis (Doc. 2), without prepayment of costs or fees or the necessity of giving security therefor.

**IT IS FURTHER ORDERED** that the complaint (Doc. 1) is dismissed with leave to amend, as discussed above. Plaintiff must file an amended complaint by **June 9, 2020** that addresses the shortcomings identified in this order.

…

…

…

…

…

…

**IT IS FURTHER ORDERED** that if Plaintiff fails to file an amended complaint by June 9, 2020, the Clerk of Court shall **terminate the action** on **June 10, 2020** and enter judgment accordingly.

Dated this 26th day of May, 2020.

Dominic W. Lanza
United States District Judge