**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeffery T. Hausauer, | No. CV-20-00653-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| City of Mesa, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). (Doc. 17.) The motion will be granted in part and denied in part.

**BACKGROUND**

I.   Factual Allegations In The FAC

The FAC alleges as follows. On April 2, 2019, Plaintiff, a 61-year-old U.S. military veteran, was riding a tricycle when he was struck by a truck at a traffic intersection in Mesa, Arizona by Russelland Fulwilder, who had been "the passenger of another truck vs. tricycle incident that the Plaintiff was the victim of, on that same corner in April of 2016." (Doc. 7 at 2-3.)

Six Mesa Police Department officers—Defendants Nicholas Nelson, David Monarrez, Carlos Santana, Christophe Tautimez, Shannon O'Leary, and Linwood Brannon, III (the "Officers")—arrived at the scene. (*Id.* at 4.) Plaintiff was on the hood of the truck that hit him when Officers Nelson and Santana arrived. (*Id.*) Plaintiff told them

"that he felt as if his left leg was broken, that he was bleeding from his left side, that he was having problems breathing and his left thumb felt broken." (*Id.*)  Paramedics were at the scene of the incident, but Officers Nelson and Santana "refused to allow" the paramedics to treat Plaintiff. (*Id.*)  Officers Monarrez, Tautimez, O'Leary, and Brannon "chose not to intercede" and "blockaded the scene of the incident, preventing the . . . paramedics from treating" Plaintiff. (*Id.* at 5.)

Officer Santana "threatened to shoot [Plaintiff] if he did not remove himself from the hood of the truck and sit on the curb." (*Id.*)  "Plaintiff explained again that he could not move and was in serious pain." (*Id.*)  Officer Santana "put his hand on his weapon" and repeated the threat, so Plaintiff attempted to comply. (*Id.*)  When Plaintiff "attempted to put his weight on his left leg[,] he immediately fell to the ground with his left foot pinned in back of his left ear under his own weight and was unable to get up." (*Id.*)

Officer Santana "had one of the onlookers on the sidewalk go into the street and straighten the left leg of the Plaintiff." (*Id.*)  Officer Nelson moved Plaintiff in front of the truck that hit him and "then put a woman in the driver seat of the truck," on Officer Santana's orders. (*Id.* at 5-6.)  Officer Santana told Plaintiff "to confess that he was lying about his injury" and threatened to "have [Plaintiff] run over" with the truck that had hit him if he refused to confess. (*Id.* at 6.)  Officers Santana and Nelson then ordered the woman in the driver's seat of the truck to "drive over [Plaintiff] several times."  Officer Nelson then "exchanged places" with the woman "and ran over [Plaintiff] several more times." (*Id.*)

The paramedics then were "allowed to provide emergency treatment," and Plaintiff was transported to an emergency room where he underwent treatment for various severe injuries sustained during the incident. (*Id.* at 7.)

II.   Procedural History

On April 1, 2020, Plaintiff filed the Complaint (Doc. 1) and an application to proceed in forma pauperis ("IFP") (Doc. 2).  The Court granted the IFP application and, pursuant to 28 U.S.C. § 1915(e)(2), dismissed one claim (Fourteenth Amendment coercion)

with prejudice and dismissed the remaining claims with leave to amend.  (Doc. 6.)  The Court noted that the allegations were "conclusory" and "vague" and failed to differentiate between the defendants.  (*Id.*)

On June 9, 2020, Plaintiff filed the FAC, which included the same four counts as the original Complaint: (1) deliberate indifference to medical needs, in violation of the Fourteenth Amendment (2) a Fourteenth Amendment claim of coercion; (3) a common law tort claim for "assault and battery as a result of coercion"; and (4) a violation of the right to equal protection under the Fourteenth Amendment.  (Doc. 7.)  The FAC also includes a separate count "against the City of Mesa and Police Department." (*Id.* at 12-14.)

On June 17, 2020, the Court screened the FAC pursuant to 28 U.S.C. § 1915(e)(2) and dismissed with prejudice the (impermissibly reasserted) Fourteenth Amendment coercion claim and the Fourteenth Amendment equal protection claim.  (Doc. 8 at 3.)  The Court determined that "the remaining claims, liberally construed, are not subject to dismissal at the screening stage, without prejudice to the Defendants' ability to file a motion to dismiss under Rule 12(b)(6)."  (*Id.*)

On August 4, 2020, Defendants filed the now-pending motion to dismiss the FAC for failure to state a claim.  (Doc. 17.)  Plaintiff filed a response (Doc. 19) and Defendants filed a reply (Doc. 20).

**DISCUSSION**

Defendants advance two arguments in favor of dismissal: (1) Plaintiff's complaint "does not contain sufficient plausible allegations to support a claim for relief," and (2) "the Mesa Police Department is a nonjural entity that lacks the capacity to be sued."  (Doc. 17 at 5-8.)

I.   <u>The Mesa Police Department Is A Non-Jural Entity</u>

"[T]here is a consensus that city police departments are non-jural entities that may not be sued in their own names."  *Payne v. Arpaio*, 2009 WL 3756679, *4 (D. Ariz. 2009) (collecting cases).  "[T]he Mesa Police Department is not a separate entity, but is solely a department of the City of Mesa."  *Williams v. City of Mesa Police Dep't*, 2009 WL

2568640, *3 (D. Ariz. 2009). "Because the City of Mesa Police Department does not have a separate legal existence, it is not a proper defendant." *Id.*

Although Plaintiff "disagrees" (Doc. 19 at 4), Plaintiff has provided no legal authority to the contrary. Thus, any claim against the Mesa Police Department is dismissed with prejudice.[1]

II.     The Factual Allegations State A Claim

    **A.     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*[2] "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144-45 (9th Cir. 2013).

Legal conclusions couched as factual allegations are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 679-80 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

---

[1] When a claim against a defendant is dismissed "with prejudice," it is "an adjudication on the merits," and thus Plaintiff cannot (1) amend the complaint to re-add the claim in the current action or (2) file a new action in the District of Arizona bringing the same claim. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001). "That is undoubtedly a necessary condition, but it is not a sufficient one, for [barring the same claim] in other courts." *Id.* at 506.

[2] The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015).

*Id.* Taking as true all of the well-pleaded factual allegations, there must be "more than a sheer possibility" that a defendant is liable for the claim to be "plausible." *Id.* at 678.

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law . . . operating on the assumption that the factual allegations in the complaint are true." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). "What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 327. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing this passage from *Neitzke* with approval); *Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.").

**B.     Analysis**

There can be little doubt that Plaintiff has included enough detail in his narrative to satisfy the requirement that legal conclusions must be supported by well-pleaded factual allegations.  Indeed, Defendants recount the narrative, as told by Plaintiff in the FAC, in vivid detail in their motion to dismiss.  (Doc. 17 at 2-4.)  Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,'" *Iqbal*, 556 U.S. at 677, but Plaintiff has provided them.  The FAC cannot be accused of being "an unadorned, the-defendant-unlawfully-harmed-me accusation" that offers only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Id.* at 678 (internal quotation marks omitted).

The gravamen of Defendant's argument is that Plaintiff's allegations are not believable.  However, this is not the proper inquiry for a motion to dismiss. *Neitzke*, 490 U.S. at 327.

Defendants characterize Plaintiff's allegations as "outrageous" and then argue that such allegations are "not entitled to the assumption of truth," citing *Iqbal*. (Doc. 17 at 5-6.)  But in *Iqbal*, the Supreme Court emphasized that it was not discrediting any factual allegations because they were unbelievable:

> [T]he allegations are conclusory and not entitled to be assumed true.  To be clear, *we do not reject these bald allegations on the ground that they are*

> *unrealistic or nonsensical*. We do not so characterize them any more than the Court in *Twombly* rejected the plaintiffs' express allegation of a "contract, combination or conspiracy to prevent competitive entry" because it thought that claim too chimerical to be maintained. *It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth.*

*Iqbal*, 556 U.S. at 681 (emphasis added) (citations omitted).

Defendants appear to conflate two determinations—(1) whether facts alleged in the complaint are believable and (2) whether the facts, *all taken as true*, plausibly suggest liability. The "plausibility" inquiry does not ask whether the facts themselves are plausible, but rather whether the conclusion drawn from those facts (that a defendant is liable for the asserted claims) is plausible. *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citations omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556.

The plausibility determination is easily resolved here. If Plaintiff's factual allegations are assumed to be true, Defendants are plausibly liable for the claims remaining in this action, deliberate indifference and assault and battery.

1. <u>Deliberate Indifference</u>

"Although the 14th Amendment does not generally require police officers to provide medical assistance to private citizens, when a state officer's conduct places a person in peril in deliberate indifference to their safety, that conduct creates a constitutional claim." *Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997) (citation omitted). "[A] state actor . . . has a constitutional duty under the due process clause to protect an individual where the state places that individual in danger through affirmative conduct," regardless of whether that individual is in custody. *Id.* at 711. Preventing others from providing needed medical care is an affirmative action that increases the risk of harm. *Id.* at 710; *see also Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1082 (9th Cir. 2013) ("Impeding access to medical care amounts to leaving a victim in a more dangerous situation.").

The FAC alleges that the Officers arrived at the scene of the accident to find Plaintiff, who was located on the hood of the vehicle that hit him, reporting that he was badly injured and needed medical treatment, but they refused to allow the paramedics to treat him. (Doc. 7 at 2-5.) The FAC states a Fourteenth Amendment due process claim for deliberate indifference to medical needs.

### 2. Assault And Battery

Arizona law applies to the tort claim. *Tekle v. United States*, 511 F.3d 839, 855 (9th Cir. 2007) (applying state law to an assault and battery claim). "To establish a battery claim, a plaintiff must prove that the defendant intentionally caused a harmful or offensive contact with the plaintiff to occur." *Johnson v. Pankratz*, 2 P.3d 1266, 1268 (Ariz. Ct. App. 2000).

The FAC alleges that Officers Santana and Nelson caused Plaintiff to be repeatedly run over with a truck. The FAC states a claim for assault and battery as to Officers Santana and Nelson. Construed liberally, the FAC states a claim for assault and battery under an aiding and abetting theory as to the remaining Officers. *Ramirez v. Chavez*, 226 P.2d 143, 146 (Ariz. 1951) ("If [a defendant] did aid and abet in the commission of such battery or acted in concert with [the acting defendant] he is equally liable with [the acting defendant] for the damages sustained by [the plaintiff]. Aid and abet means simply to encourage, counsel, advise or assist in the commission of an act. The words comprehend all assistance rendered by acts or words of encouragement or support *or presence* actual or constructive, to render assistance should it become necessary. It means to assent to an act; to lend to it countenance and approval, either by an active participation in it or by in some manner advising or encouraging it.") (emphasis added); *see also Rodgers v. Bryan*, 309 P.2d 773, 776 (Ariz. 1957).

Thus, Defendants' Rule 12(b)(6) motion for failure to state a claim will be denied as to the Officers.

### III. The FAC Is Not Frivolous

Although Defendants' motion is styled as a motion to dismiss pursuant to Rule

12(b)(6), the gist of the motion is that the action is frivolous, which is a ground for dismissal pursuant to 28 U.S.C. § 1915(e)(2). The Court already screened the FAC pursuant to § 1915(e)(2) and determined that the portions of the FAC that survived that screening were not frivolous. (Doc. 8.) The Court can revisit its earlier determination, as § 1915(e)(2) specifies that it applies "at any time." However, it is not clear that it would be proper for defendants to an action to move for reconsideration of a district court's § 1915 screening order, and in fact, Defendants have not done so here. Nevertheless, assuming *arguendo* that such a motion could ever be proper, and construing the motion to dismiss as seeking such reconsideration, the Court reaffirms its previous determination that the action is not frivolous.

A complaint is "frivolous" where "it lacks an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325. "To this end, [§ 1915(e)(2)(B)(i)] accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 327. "Examples of the latter class are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.* at 328. Nevertheless, "this initial assessment of the *in forma pauperis* plaintiff's factual allegations must be weighted in favor of the plaintiff." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "In other words, the [§ 1915(e)(2)(B)(i)] frivolousness determination, frequently made *sua sponte* before the defendant has even been asked to file an answer, cannot serve as a factfinding process for the resolution of disputed facts." *Id.*

"[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33. "An *in forma pauperis* complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely." *Id.* "Some improbable allegations might properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age-

old insight that many allegations might be 'strange, but true; for truth is always strange, Stranger than fiction.'" *Id.*

The Supreme Court declined the invitation to "define the 'clearly baseless' guidepost with more precision" because district courts "are in the best position to determine which cases fall into this category." *Id.*

Here, Plaintiff notes in his response that his FAC "does not accuse any Defendant of being a cement-eating alien from the planet Sorong" (Doc. 19 at 4), a colorful way of asserting that his allegations are not fanciful. Defendants respond by asserting that "the plaintiff's 'cement-eating alien' test does not accurately capture *Iqbal*'s holding." (Doc. 20 at 2 n.1.) Of course, as noted above, *Iqbal*'s holding has nothing to do with fanciful allegations; it is confined to conclusory allegations and conclusions that cannot plausibly be drawn from facts accepted as true. 556 U.S. at 681. The "clearly baseless" standard that applies to fanciful allegations during § 1915 IFP screenings, on the other hand, has not been reduced to "a monolithic standard," *Denton*, 504 U.S. at 33—and yet the Court can't help but note that cement-eating aliens are squarely in line with the kind of allegations that district courts deem "clearly baseless."

For example, in *Ahmann v. Penny*, 2006 WL 3498572, *2 (D. Nev. 2006), the district court deemed "wholly incredible" the plaintiff's allegations that "conspirators have used an 'electronic communication devise [sic] set at distorted volumes with the intent to cause physical pain and torture'" and that he "was subjected to being killed, poisoned, raped, being held in jail forever, hypnotized, having items stolen, stalked and many other offenses." The court noted that the plaintiff's "claim of being killed" could not be reconciled with his being "still here to file this action." *Id.*

In *Maxey v. KCRA Television, Inc.*, 2015 WL 6951277, *1 (E.D. Cal. 2015), the district court began by noting that it does not exercise lightly the "unusual power" to deem a plaintiff's allegation clearly baseless and furthermore "takes very seriously" the admonition of the Supreme Court that truth can be "stranger than fiction." Nevertheless, where the plaintiff alleged "that the government surgically inserted a microchip into his

brain as an infant in violation of his Eighth Amendment rights, and have since engaged in a campaign to undercut plaintiff's credibility by slandering his good name" as part of a "vast government conspiracy originating with President Richard Nixon and extending to President Barack Obama and Governor Jerry Brown," the district court found the allegations "so incredible that they need not be accepted as true." *Id.*

In *Riches v. Rice*, 2007 WL 4533130, *1 (N.D. Cal. 2007), the plaintiff filed a § 1983 lawsuit against Jerry Rice and Bill Walsh, the former player and coach of the San Francisco 49ers football team, asserting that Jerry Rice was "torturing" the plaintiff when he was on the television program "Dancing with the Stars" by "smiling at [the plaintiff], knowing [the plaintiff was] suffering hardship and pain," and that Bill Walsh was collaborating with John Walsh (the host of "America's Most Wanted"), "Walsh from Watergate," and Brandon Walsh, a fictional character from the 1990's teen drama television series "Beverly Hills, 90210," to influence prison officials to feed the plaintiff inadequately. The district court found these allegations to be "clearly baseless, irrational or wholly incredible." *Id.*

Overwhelmingly, the cases in which district courts have found allegations to be "clearly baseless" have featured facts more bizarre than those alleged in this case. *See also, Riches v. Longoria*, 2007 WL 3146704, *1 (N.D. Cal. 2007) (claim that actress Eva Longoria is plaintiff's "intellectual property" and that Maxim Magazine stole her from him was clearly baseless); *Rosberg v. San Francisco Sheriff's Dep't.*, 2010 WL 2219725, *1 (N.D. Cal. 2010) (plaintiff's allegations that he was being attacked by "the voice of God" or "similar technology" deemed "wholly incredible"); *Payne v. Contra Costa Sheriff's Dep't*, 2002 WL 1310748, *1 (N.D. Cal. 2002) ("Plaintiff's allegations that he has been subjected to various harassment and torture through the use of telepathy/mind control are factually frivolous under *Denton*.").

By contrast, in *Denton*, the plaintiff filed five lawsuits alleging that he was "drugged and homosexually raped a total of 28 times by inmates and prison officials at different institutions." 504 U.S. at 28. The district court adopted a magistrate judge's

recommendation that the complaints be dismissed as frivolous. The dismissal order reasoned that "each complaint, taken separately, is not necessarily frivolous," but that "a different picture emerges from a reading of all five complaints together" because "[d]espite the fact that different defendants are allegedly responsible for each assault, the purported *modus operandi* is identical in every case." *Id.* at 29. After two trips to the Ninth Circuit and the Supreme Court, finally a magistrate judge determined that the complaints were not frivolous, and the action was ultimately resolved at the summary judgment stage. *Hernandez v. Denton*, 83-cv-0645 (E.D. Cal. Order filed Feb. 29, 1996).[3]

Here, certain elements of Plaintiff's FAC appear improbable and highly coincidental. Nevertheless, the Court concludes that the FAC is not "wholly incredible" or "clearly baseless."

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 17) is granted in part and denied in part.

…

…

…

---

[3] *See generally* Michael Zachary, Dismissal of Federal Actions and Appeals Under 28 U.S.C. Ss 1915(e)(2) and 1915a(b), 42 U.S.C. S 1997e(c) and the Inherent Authority of the Federal Courts: (a) Procedures for Screening and Dismissing Cases; (b) Special P, 43 N.Y.L. Sch. L. Rev. 975, 1032-33 (2000); *see also id.* at 1051-52 ("The Denton actions amply illustrate the difficulty in defining the border between improbable and incredible when a claim, or series of claims, involves multiple improbable allegations. The judges who considered the Denton rape claims frivolous focused exclusively on the cumulative effect of the allegations, the repetitiveness of which rendered them questionable, and Hernandez's psychological diagnosis, while ignoring or unnecessarily downplaying the following countervailing factors: (1) Rapes do occur in prison and in psychiatric hospitals; (2) Certain prisoners may be the victims of multiple rapes because of particular physical or psychological traits that make them targets of sexual interest by other prisoners or guards; (3) Hernandez was, in fact, forcibly drugged by prison officials, albeit pursuant to the instructions of medical personnel; and (4) Certain of the rape allegations were supported by the affidavits of two other prisoners. The fourth factor, by itself, should have made a finding of factual frivolousness impossible. However, even in the absence of the two affidavits, the rape claims should not have been dismissed outright. While suspiciously repetitive, there remained the possibility that one or more of the alleged rapes did in fact occur. Hernandez's mental illness may have caused him to supplement or repeat allegations concerning a rape that actually occurred rather than invent the entire series of rapes.").

**IT IS FURTHER ORDERED** that the Mesa Police Department is dismissed from this action with prejudice.

Dated this 14th day of December, 2020.

Dominic W. Lanza
United States District Judge